# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **Steven Miller**<br>38W481 Callighan Place,<br>Geneva, IL 60134<br><br>      Plaintiff,<br><br>    -vs.-<br><br>**Syneos Health US, Inc.**<br>c/o United Agent Group Inc.<br>350 S Northwest Highway #300<br>Park Ridge, IL 60068<br><br>      Defendant. | CASE NO.: 1:23-cv-00884<br><br>JUDGE:<br><br>**COMPLAINT FOR RELIGIOUS DISCRIMINATION UNDER 42 U.S.C. § 2000e,** *et seq.*<br><br>**JURY DEMAND ENDORSED HEREON** |

For his Complaint against Defendant Syneos Health US, Inc. ("SYNEOS"), Plaintiff Steven Miller ("MILLER") states:

### INTRODUCTION

1. SYNEOS violated Title VII of the Civil Rights Act of 1964 ("Title VII") when it failed to accommodate MILLER's religious beliefs and when it did not engage in an interactive process to determine and provide reasonable accommodation.

2. This suit seeks to remedy SYNEOS' statutory violations and discrimination against MILLER who requested a religious accommodation from SYNEOS' mandatory Covid-19 vaccine.[1]

3. Rather than comply with its Title VII obligations, SYNEOS threatened to terminate

---

[1] Counsel for Miller recognizes Covid-19 "vaccinations" are unlike traditional vaccines which confer immunity and protect against spread of the targeted illness in the population.

MILLER if he did not receive a Covid-19 vaccine and terminated him for not taking the shot.

4. SYNEOS' statutory violations, discrimination, and retaliation left MILLER with the false choice of receiving the Covid-19 vaccine in violation of his sincerely held religious beliefs or losing his job.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e. Under 28 U.S.C. § 1367(a), this Court has pendent jurisdiction over Plaintiff's state law claim. Plaintiff's claim under the Illinois Human Rights Act (IHRA) is authorized by 775 ILCS § 5/2-102.

6. Venue is proper under 28 U.S.C. § 1391(b) because the events complained of occurred in this District and Division.

## PARTIES

7. Plaintiff Steven Miller lives in Geneva, IL and worked as a Neuroscience Sales Specialist for Syneos Health US, Inc. on the Janssen Ponvory ("J&J") team in Northern Illinois.

8. Defendant Syneos Health US, Inc. is a biopharmaceutical solutions organization headquartered in Somerset, New Jersey and doing business in Illinois. Its registered agent in Illinois is United Agent Group Inc. at 350 S Northwest Highway #300, Park Ridge, IL 60068.

## FACTUAL ALLEGATIONS

9. MILLER worked for SYNEOS for about a year with a hire date of March 24, 2021.

10. During his employment at SYNEOS, MILLER received accolades from regional and national sales management, including during the vaccine mandate and accommodation request period. This included formal recognition of his success from Regional Business Director of Sales, Paul Medek ("MEDEK") on September 20, 2021 and November 19, 2021, and from National Business Director, Armando Baquero ("BAQUERO") on October 7, 2021. By the end of 2021, MILLER was the top salesperson in his region and was ranked third nationally.

11. MEDEK, MILLER's direct supervisor, was so impressed with MILLER's performance that he wrote a letter of recommendation for him after termination. In the March 12, 2022 letter, MEDEK stated that within two months of employment, "Steve was leading the Midwest Region in patient new starts. Steve finished #1 in the Midwest Region in the 4th Quarter and 10th in the Nation overall. This was a fantastic accomplishment within six months vs. the Nation that was deployed for twelve."

12. During his employment with SYNEOS, MILLER wore a mask when calling on clients, patients, or medical providers and had no work performance issues due to being unvaccinated.

13. Beginning November 1, 2021, MILLER tested daily for Covid-19 during the work week and submitted test results as required. Two weeks later, SYNEOS reduced this requirement to once per week. MILLER met testing requirements during the accommodation period ending on January 31, 2022. MEDEK tracked and verified MILLER's adherence to testing requirements.

14. MILLER tested positive for Covid-19 after Christmas 2021 and informed MEDEK. On January 6, 2022, MILLER contacted MEDEK and told him he tested negative for Covid-19 for the first time since Christmas.

**A. SYNEOS' mandated medical treatment.**

15. On September 9, 2021, President Biden issued Executive Order 14042 (the "Order").[2]

16. The Order required that all contracts with the Federal Government, and those of subcontractors, include a clause requiring compliance with the Safer Federal Workforce Task Force ("Task Force") guidance regarding Covid-19 safeguards.

17. Following issuance of the Order, Task Force guidance required Covid-19 vaccination.[3]

---

[2] https://www.presidency.ucsb.edu/documents/executive-order-14042-ensuring-adequate-covid-safety-protocols-for-federal-contractors [last accessed 1/12/2023]
[3] https://www.saferfederalworkforce.gov/contractors/

3

18. Task Force guidance called for employees of federal contractors to receive Covid-19 vaccinations by January 18, 2022, unless legally entitled to an accommodation for medical or religious reasons.[4]

19. Around the same time the Federal Occupational Health and Safety administration ("OSHA") issued a rule requiring employers with over 100 employees to mandate Covid-19 injections for their workforce.[5]

20. On August 16, 2021, J&J, a SYNEOS account, announced a Covid-19 vaccine mandate for employees and contractors effective October 4, 2021.[6] J&J provided medical and religious accommodations for its employees as required under Title VII and the ADA.

21. On September 2, 2021, SYNEOS announced its new Covid-19 vaccine mandate effective October 22, 2021 in a message from Jonathan Olefson ("OLEFSON"), General Counsel and Corporate Secretary. This mandate required U.S. employees when "on-site with colleagues or customers" to be fully vaccinated against Covid-19. This included entering a SYNEOS location/attending a SYNEOS event or meeting face-to-face with "clients, colleagues, patients, clinical trial investigators and healthcare practitioners." OLEFSON noted that "field or site-facing

---

[4] *Id.* at 5. This mandate was stayed on December 7, 2021, when the Southern District of Georgia enjoined the Order nation-wide for federal contractors (*See Georgia v. Biden*, 574 F.Supp.3d 1337 (S.D. Ga. 2021), *aff'd in part, vacated in part sub nom. Georgia v. President of the United States,* 46 F.4th 1283 (11th Cir. 2022). In response to this nationwide injunction, Department of Defense guidance indicated on December 9, 2021 that it would not enforce the mandate on existing contracts and, on December 10, 2021, the Task Force updated its guidance stating that the government would not seek to enforce the clause implementing requirements of the Order where the place of performance identified in the contract is in the U.S. or an area subject to the injunction (*See* "UPDATE TO ALERT DATED 12/7/21: *Federal Court in Georgia Enjoins Enforcement of Federal Contractor/Subcontractor Vaccine Mandate Nationwide*," https://www.smithcurrie.com/publications/covid-19/alert-federal-court-in-georgia-enjoins-enforcement-of-federal-contractor-subcontractor-vaccine-mandate-nationwide/

[5] On November 12, 2021, the U.S. Fifth Circuit Court of Appeals reaffirmed the halt of the large employer vaccine mandate as part of a nation-wide stay, and OSHA temporarily suspended its enforcement. On December 17, 2021, the U.S. Sixth Circuit Court of Appeals lifted the nationwide ban on the mandate. Finally, on January 13, 2022, the U. S. Supreme Court blocked enforcement of the emergency vaccine mandate for businesses with 100 or more employees. OSHA formally withdrew the mandate on January 26, 2022 (See "Vaccine Mandate Litigation," https://law.georgia.gov/resources/vaccine-mandate-litigation).

[6] https://news.yahoo.com/companies-adopting-covid-vaccine-mandates-103024528.html

4

U.S. employees […] may need to comply with customer-driven vaccination requirements prior to the Oct. 22 policy start date." The mandate required employees to upload proof of vaccination, obtain an approved accommodation by October 22, 2021, or be denied office access. The announcement provided a process for requesting exemption.

22. On September 2, 2021, Bryan Distefano ("DISTEFANO"), SVP Sales, Deployment Solutions, emailed J&J team members stating that J&J had rolled out a new vaccination requirement applying to all U.S. field-based employees who worked and/or who performed work at J&J sites. DISTEFANO asked team members to upload proof of vaccination by September 10, 2021 to "closely align with the JNJ vaccination timeline." DISTEFANO referred those seeking medical or religious exemption to the "Employee Exemption & Accommodation Process."

23. On October 5, 2021, DISTEFANO emailed a reminder to the J&J team to upload proof of vaccination. This message emphasized a goal of 100% vaccine compliance before the October 22, 2021 deadline.

24. Although SYNEOS purported to align with J&J's vaccine rollout, its policy goal of 100% vaccine compliance conflicted with J&J's policy to grant qualified medical and religious exemptions.

25. In an email dated October 8, 2021, SYNEOS National Business Director Armando Baquero ("BAQUERO"), communicated a goal of 100% vaccination compliance by October 18, 2021 or "earlier if possible." BAQUERO directed management to contact non-compliant employees by October 15, 2021 for a "discussion."

26. On October 20, 2021, OLEFSON emailed stating that employees who had not uploaded their vaccination information or requested exemption were required to upload their vaccination

5

status by October 22, 2021, be confirmed by their manager as fully remote, or state that they did not intend to get the vaccine.

27. SYNEOS' mandate was absolute. Although granting temporary accommodations until January 31, 2022, SYNEOS provided no ongoing accommodation such as periodic testing, mask wearing, or social distancing--even for employees like Plaintiff with acquired immunity through Covid-19 infection. For example, on December 9, 2021, BAQUERO told MILLER that SYNEOS would no longer accept "any exemptions from anybody for any reason." Sometime following BAQUERO's conversation with MILLER, Tracy Synder ("SNYDER"), Manager, Human Resources, Deployment Solutions, also told Plaintiff that SYNEOS was no longer accepting "any exemptions, religious or medical."

28. Even the temporary accommodation for the first two weeks was unduly burdensome – requiring daily PCR Covid-19 testing and submission of the results sought to intimidate and coerce MILLER's compliance with the vaccine mandate.

**B. Federal and State law prohibiting religious discrimination and retaliation.**

29. Title VII requires employers to offer reasonable accommodation to a requested religious exemption absent demonstration of undue hardship on their business. Failure to do so is an unlawful employment practice. 29 C.F.R. § 1605.2 (b)(1) (Up to date as of December 28, 2022).[7]

30. "[T]he sincerity of an employee's stated religious belief is usually not in dispute and is 'generally presumed or easily established.'" *See "Section 12: Religious Discrimination"* § 12-1. A.2, EEOC (Updated January 15, 2021).[8]

31. Title VII prohibits SYNEOS from discriminating against employees based on religion. This "include[s] all aspects of religious observance and practice, as well as belief, unless an

---

[7] https://www.ecfr.gov/current/title-29/subtitle-B/chapter-XIV/part-1605/section-1605.2#1605.2-footnote-2
[8] https//www.eeoc.gov/laws/guidance/section-12-religious-discrimination#_ftnref40

employer demonstrates that he is unable to reasonably accommodate an employee's […] religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

32. "[T]he law requires a covered employer to provide a reasonable accommodation for an employee's request to participate in a religious observance or practice if an accommodation would not cause the employer undue hardship." *Adeyeye v. Heartland Sweeteners, LLC,* 721 F.3d 444, 447 (7th Cir. 2013).

33. In other words, "[a]n employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees but is not required to incur undue hardship." *Weber v. Roadway Express*, 199 F.3d 270, 273 (5th Cir. 2000).

34. Title VII also prohibits SYNEOS from retaliating against employees for engaging in protected activity. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014).

35. U.S. Equal Employment Opportunity Commission (EEOC) guidance on Title VII and the Covid-19 pandemic provides that employers should "thoroughly consider all possible reasonable accommodation." Periodic testing and wearing a face mask are examples of reasonable accommodation to vaccination. *See "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws"* §§ K.1, K.2, K.12, EEOC (Updated July 12, 2022).[9]

36. Illinois Compiled Statutes 775 § 5/2-102 also prohibits employment discrimination based on religion and has requirements, like those outlined above, to accommodate sincerely held religious beliefs.

---

[9] https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws]

**C. MILLER's accommodation requests and SYNEOS' responses.**

36. Although SYNEOS let employees apply for either a religious or medical disability exemption to Covid-19 vaccination, it did not allow requests for both exemptions.

37. Employees could request accommodation from the vaccine by completing a form and submitting it to the specified mailbox.

38. Employees had to be approved for exemption by October 22, 2021 or they would be "denied office access."

39. On September 15, 2021, MILLER submitted s religious exemption request to SYNEOS.

40. A devout Catholic Christian, MILLER stated that he was a baptized Catholic and explained how the teachings of the Catholic Church led him to decline the vaccine. MILLER detailed his strong convictions against the use of aborted fetal cell lines either in the development or the production of the Covid-19 vaccine. Taking the vaccine would defile his body which is the temple of the Holy Spirit and violate his religious convictions.

41. MILLER stated that Christ has not called us to be safe at all costs but rather to believe "profoundly, to the core of our very being" that our lives are in the Father's hands. In addition, Catholic teaching as stated by the US Conference of Catholic Bishops says that vaccination must be voluntary rather than mandated, and a general moral duty exists to refuse any medical products, including vaccines, that are "produced using human cell lines derived from direct abortions." Under Catholic teaching, a person is "morally required" to obey his "sure conscience." MILLER also outlined his concerns under the Catholic concept of therapeutic proportionality. Monsignor Daniel Deutsch of Saint Patrick's Catholic Church co-signed MILLER's exemption letter.

8

42. In addition to a religious exemption, MILLER wanted to request a medical exemption[10] but was told by MEDEK that he must choose either a religious or medical exemption but could not submit both. MILLER chose to submit a religious exemption due to the strength of his personal faith conviction.

43. SYNEOS approved MILLER's religious exemption request on September 22, 2021, stating that it had "concluded" that MILLER had a "sincerely-held religious belief." Human Resources ("HR") would partner with his business unit to determine whether SYNEOS could provide a temporary accommodation with an expected window of 15 business days for the determination.

44. SYNEOS confirmed approval of MILLER's religious exemption on October 29, 2021 in an email from Nicole Blum ("BLUM"), Director, HR Shared Services. Effective November 1, 2021, MILLER had to submit daily proof of PCR Covid-19 testing through the HR self-service tool to meet with "clients, patients, healthcare providers at sites or in the field" in performance of his job. Later, on October 29, 2021, HR sent a follow-up email regarding his "approved exemption status" and client requirements.

45. On November 1, 2021, MILLER began daily PCR testing for Covid-19 and submitting test results as instructed. His submissions were tracked by MEDEK.

46. Two weeks later, HR and company management reduced MILLER's testing requirement to weekly. MILLER continued to follow corporate testing guidance and wore a mask daily.

47. On November 5, 2021, HR emailed MILLER with further clarification and revised testing requirements (allowing for home testing) for those with approved medical or religious exemptions. From October 2021 through January 2022, MILLER and his Director MEDEK continued to

---

[10] His father and mother died of strokes and his brother had a stroke at age 47.

9

discuss the vaccine mandate and MILLER's need for accommodation. MEDEK told MILLER, "Steve they are not going to change" and that MILLER needed to get vaccinated.

48. In November of 2021, MEDEK told the Vice President of Neurology Sales, "Don't let this guy go. He is the best in the country."

49. On December 9, 2021, BAQUERO called MILLER personally to tell him that SYNEOS was no longer accepting any exemption to the vaccine and that MILLER had to get vaccinated or be terminated. MEDEK was aware that BAQUERO was contacting MILLER to tell him that SYNEOS was no longer accepting any exemptions. BAQUERO did not engage in an interactive discussion with MILLER regarding reasonable accommodations.

50. Following the call from BAQUERO, MILLER received a call from SNYDER regarding his religious exemption. During this conversation, SNYDER said that "(w)e will no longer be accepting any exemptions, religious or medical" because "the company feels unvaccinated employees will be less effective in performing their jobs to the company." SNYDER did not engage in an interactive discussion with MILLER regarding reasonable accommodations.

51. MILLER spoke to SNYDER on the phone a second time during which he discussed his productivity. MILLER felt they were trying to "scare him" into compliance. SNYDER did not engage in an interactive discussion with MILLER regarding reasonable accommodations.

52. MILLER wore a mask and followed client and provider protocols with no impact on his job performance.

53. MILLER tested positive for Covid-19 over Christmas 2021 and told MEDEK that due to safety issues with vaccination following a recent Covid-19 infection he could not be vaccinated for between 60 and 90 days even if he chose to take the vaccine.

54. On January 21, 2022, HR advised MILLER that due to his recent Covid-19 infection MILLER was eligible for an extension of the accommodation period, for medical reasons, through February 15, 2022. HR asked MILLER to declare his intention regarding vaccination after the extended accommodation period and acknowledge that if MILLER failed to be vaccinated by February 15, 2022, MILLER would be terminated. SYNEOS HR did not engage in an interactive discussion with MILLER regarding reasonable accommodation.

55. On January 22, 2022, MILLER responded that his answer was "no" and that he could not in "good moral conscience" turn away from his "religious beliefs simply due to continued harassment and threats of termination, and direct clear religious discrimination." MILLER highlighted his excellent performance and placement at tenth in the nation in 2021 even though he had a much-shortened period of employment with SYNEOS that year. MILLER again restated that he had no performance problems due to being unvaccinated – as shown by his sales achievements – thus negating SYNEOS' claim that unvaccinated employees hurt company performance.

56. On January 25, 2022, MILLER received another letter from HR. Since MILLER declared he did not intend to take the vaccine at the end of the temporary exemption, he would be terminated on January 31, 2022. The temporary accommodation, through January 31, 2022, prohibited MILLER from accessing SYNEOS offices and, if he had to attend a company meeting or event not at a SYNEOS office, required MILLER to follow SYNEOS', local jurisdictional, and client safety requirements. SYNEOS stated that these requirements could include masking, social distancing, and testing–which MILLER was already doing. These are also listed as reasonable accommodations to the vaccine under EEOC Covid-19 Guidelines.[11] Again, SYNEOS HR did not engage in interactive discussion with MILLER regarding reasonable accommodation.

---

[11] *Id.*, at § K.2.

57. Following this letter, MEDEK told MILLER that "they" were not going to change, and that MILLER had to get vaccinated.

60. The Covid-19 vaccine does not prevent transmission of Covid-19. Thus, there was no reason for SYNEOS to coerce MILLER to take it. The mandate was unconscionable and unjustified, as was SYNEOS' refusal to permit MILLER to continue working under the same accommodations he had for over three months.

61. MILLER's termination was effective January 31, 2022.

**D. EEOC filing and MILLER's right to sue.**

62. MILLER timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") raising the issues in this Complaint.

63. The EEOC issued MILLER a Notice of Right to Sue on November 14, 2022. Attached.

**COUNT I**
**Violation of Title VII, 42 U.S.C. § 2000e, *et seq.***
**Religious Discrimination-Failure to Accommodate**

63. MILLER restates the foregoing paragraphs as if set forth fully herein.

64. MILLER holds sincere religious beliefs that preclude him from receiving a Covid-19 vaccine.

65. MILLER informed SYNEOS of those beliefs and requested accommodation from the vaccine on religious grounds.

66. SYNEOS failed to engage in an interactive process with MILLER regarding his requested religious accommodation. SYNEOS responded to MILLER's accommodation requests and attempts at resolution with a blanket denial and provided no reason why vaccination was required to fulfill the essential functions of his position. Under a temporary accommodation during the initial mandate period, MILLER excelled in his sales role and reached top performance levels

without getting vaccinated. Furthermore, SYNEOS explored no EEOC recommended accommodations such as wearing a mask or testing weekly for Covid-19 even though MILLER had successfully worked wearing a mask and testing weekly throughout the mandate period.

67. SYNEOS did not provide MILLER with reasonable accommodations for his sincerely held religious beliefs.

68. SYNEOS discriminated against MILLER because of his religious beliefs.

69. SYNEOS' failure to provide religious accommodations has harmed and will continue to harm MILLER.

70. By failing to engage in the interactive process or offer any reasonable accommodation, SYNEOS' discriminatory actions were intentional and/or reckless and in violation of Title VII.

## COUNT II
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*
### Religious Discrimination-Retaliation

71. MILLER restates the foregoing paragraphs as if set forth fully herein.

72. MILLER engaged in protected activity when he requested religious accommodations from SYNEOS' vaccine mandate.

73. SYNEOS responded with a blanket denial of MILLER's request for religious accommodations.

74. SYNEOS did not provide for appeal.

75. SYNEOS responded to MILLER's protected activity by giving MILLER the false choice between vaccination and effective termination.

76. MILLER's religious beliefs and protected activity were the causes of SYNEOS' adverse employment action. SYNEOS did not bother engaging in an interactive process with MILLER because SYNEOS never intended to provide accommodations even if it conflicted with MILLER's

sincerely held religious beliefs. While SYNEOS publicly offered interim accommodation to those with approved religious exemptions, SYNEOS applied pressure through SYNEOS management to comply with the vaccine policy – making accommodation requests a sham. SYNEOS' blatant disregard of religious accommodation requests for exemption from Covid-19 vaccination confirms SYNEOS' hostility to requests for religious accommodation.

77. SYNEOS retaliated against MILLER's protected activity by terminating MILLER's employment.

78. By retaliating against MILLER for engaging in protected activity, SYNEOS violated Title VII. This violation harmed and continues to harm MILLER.

## COUNT III
### Violation of 775 ILCS § 5/2-102
### Religious Discrimination in Employment

79. MILLER restates the foregoing paragraphs as if set forth fully herein.

80. Illinois Compiled Statutes 775 Section 5/2-102 prohibits employment discrimination based on religion.

81. SYNEOS violated the Illinois Human Rights Act when it terminated MILLER due to his religious objections to the Covid-19 vaccine.

82. MILLER informed SYNEOS of those beliefs and requested accommodation from the vaccine on religious grounds.

83. SYNEOS failed to engage MILLER to determine whether SYNEOS could reasonably accommodate MILLER's request for religious exemption.

84. SYNEOS has reasonable alternatives available that could have been offered to accommodate MILLER's religious beliefs, but SYNEOS refused MILLER those accommodations.

85. SYNEOS discriminated against MILLER because of his religion.

14

86. SYNEOS' failure to provide reasonable accommodations harmed and continues to harm MILLER.

**PRAYER FOR RELIEF**

WHEREFORE, MILLER requests that the Court award him:

a. Damages including back pay, reinstatement or front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages.

b. Injunctive relief.

c. Reasonable attorneys' fees and costs.

d. Any other relief that the Court considers just, proper, and equitable.

Respectfully submitted,

/s/Patrick Walsh
Patrick Walsh (6287629)
Griffin Williams McMahon & Walsh, LLP
21 N. 4th Street,
Geneva, IL 60134
pwalsh@gwmwlaw.com
(630) 457-4242
Fax: (630) 252-0644

Warner Mendenhall (0070165)
Mendenhall Law Group
190 North Union St., Suite 201
Akron, OH 44304
330.535.9160;
Fax: 330.762.9743
warner@warnermendenhall.com

*Motion for admission
pro hac vice forthcoming*

*Attorneys for Plaintiff*

15

## **JURY DEMAND**

A trial by jury is demanded for all issues so triable.

                                        Respectfully Submitted,

                                        /s/Patrick Walsh
                                        Patrick Walsh (6287629)



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Chicago District Office
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

**To:** Mr. Steven K. Miller
c/o Warner Mendenhall
Mendenhall Law Group
190 North Union Street., Suite 201
AKRON, OH 44304

Charge No: 524-2022-00852

EEOC Representative and email:   Alison Fisher
Investigator
Alison.Fisher@eeoc.gov

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 524-2022-00852.

On behalf of the Commission,

Digitally Signed By: Julianne Bowman
11/14/2022
Julianne Bowman
District Director

Cc: Syneos Health

Please retain this notice for your records.